J-S21030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDRE A. STONE | : | |
| | : | |
| Appellant | : | No. 1674 MDA 2022 |

Appeal from the Judgment of Sentence Entered December 1, 2022
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000470-2020

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:              **FILED: OCTOBER 23, 2023**

Appellant Andre A. Stone appeals from the sentence imposed following his conviction for first-degree murder.  Appellant challenges the sufficiency of the evidence and argues that the trial court erred in rejecting his diminished capacity defense.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

On the afternoon of April 14, 2020, in the City of Shamokin, Appellant kills his live-in girlfriend by strangling her in their home, then walks to the police station and tells the person who answers the door matter of factly that he wants to turn himself in.  To dispel any disbelief he presents to the police a photo of the dead woman on the floor with her back against a couch.  The police immediately go to the residence, where they find the victim as pictured and unresponsive, without any pulse.  They return to the station to further question the Appellant after administering the ***Miranda***[1] warnings.  Appellant writes out a confession and then

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

is questioned further whereby he elaborates on the event. Appellant is then charged with murder, aggravated assault and strangulation.

In pretrial proceedings, Appellant makes application for a mental health evaluation, whereby the court appointed a forensic psychiatrist for purposes of compatibility and competency to stand trial. A report was provided to only Appellant's counsel that was dated April 22, 2022. Thereafter, Appellant filed on October 13, 2022, a notice of mental [infirmity] defense[, a]fter the psychiatrist found that he was competent to stand trial. At the same time, Appellant made an informed decision to forego a jury trial. The bench trial covered two days commencing on October 18, 2022. At the conclusion, this court entered a verdict of guilty of murder in the first degree, as well as on the aggravated assault and strangulation charges.

Trial Ct. Op., 2/15/23, 1-2. The trial court sentenced Appellant to a term of life without parole, and a concurrent term of four to eight years for strangulation. The aggravated assault charge merged with first-degree murder for sentencing purposes.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether or not the trial court erred in finding premeditation and malice aforethought (elements required for a first degree murder conviction) based on the weight of the evidence presented at trial.

2. Whether or not the trial court erred in [its] consideration of a diminished capacity defense to mitigate murder in the first degree to murder in the [third] degree.

3. The questions involved in this appeal relate to whether or not reversible error was committed in the aforementioned [trial c]ourt order(s)/opinion(s)when the trial court misquoted a police transcript, and did thereby commit a mistake of fact that goes to specific intent. Specifically, when [Appellant] was asked, did you intend to kill the victim, he answered in the negative "No. I intended to kill myself."

Appellant's Brief at 10.

## Sufficiency of the Evidence

In his first claim, Appellant challenges the evidence establishing the intent element for first-degree murder.[2] Appellant's Brief at 13-14. Specifically, Appellant argues that first-degree murder "requires malice aforethought and premeditation" and "[t]here was little if any evidence presented at trial to support that these elements were proven beyond a reasonable doubt." *Id.* In support, Appellant contends that "the weight of the evidence supports the contrary" because "[t]he couple were in an argument about having an affair on the part of the deceased at the time of

_____

[2] Although Appellant appears to conflate weight and sufficiency claims in his brief, the two concepts are distinct. Indeed, a weight claim concedes that there is sufficient evidence, but that some facts so outweigh the others that to ignore them or accord them equal weight would be a miscarriage of justice. *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Further, "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." *Commonwealth v. Rivera*, 238 A.3d 482, 497 (Pa. Super. 2020) (citations omitted); *see also* Pa.R.Crim.P. 607(A). Here, our review of the record confirms that Appellant did not file a post-sentence motion. Therefore, to the extent Appellant intends to challenge the weight of the evidence on appeal, that claim is waived. *See Rivera*, 238 A.3d at 497.

her death, they were drinking alcohol, [and Appellant] was not taking his medications for a very serious mental illness, [p]sychosis." *Id.* at 14. Additionally, Appellant claims that "[t]he weight of the evidence supports that this crime occurred in the heat of passions, and was neither planned or premeditated in any way." *Id.*

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

First-degree murder is defined as follows: "[a] criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). Our Supreme Court has explained that "[t]o sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully

killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1076 (Pa. 2017) (citation omitted). Our Supreme Court has held that "[s]pecific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another. Death caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder." *Commonwealth v. Hawkins*, 701 A.2d 492, 507 (Pa. 1997) (citations omitted).

Here, the trial court addressed Appellant's claim as follows:

The very nature of strangulation provides an opportunity for the assailant to desist at any time during the period it takes to manually choke one to death. There is the struggle until unconsciousness which offers a person significant opportunity for a change of heart. "The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second." *Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013).

This killing of his girlfriend by Appellant was not just accomplished by strangulation alone; rather, when she still showed signs of life, he proceeded to apply force on her neck with his foot. This brutal act reinforces the Commonwealth's burden establishing premeditation. Appellant described in his police interview as noted above that despite his efforts in strangling her with his hands, she was still breathing and showed signs of life so he got on top of her, used his whole body, particularly his feet to make sure she was dead. The coroner's findings corroborated that she had a fracture[d] hyoid bone in her neck that was uncommon with just strangulation.

Clearly, the evidence established beyond a reasonable doubt that Appellant had a willful, premeditated, and deliberate intent to kill his girlfriend. His attack never let up or desist with the strangulation until he made sure with his feet that all of her life was gone.

Trial Ct. Op. at 4-5.

Following our review of the record, we agree with trial court's conclusions. *See Palmer*, 192 A.3d at 89. As noted by the trial court, the Commonwealth presented evidence that Appellant killed the victim by strangulation, which is sufficient to establish specific intent for first-degree murder. *See Hawkins*, 701 A.2d at 507. Further, to the extent Appellant requests that we re-weigh the evidence presented at trial, we decline to do so on appeal. *See Palmer*, 192 A.3d at 89. Accordingly, Appellant is not entitled to relief on this claim.

**Diminished Capacity**

Appellant also argues that the trial court erred in rejecting his diminished capacity defense. Appellant's Brief at 14. In support, Appellant argues that he "suffered from a psychotic disorder" and the "possibility that [he] was in a state of psychosis at the time of the incident was very real, as [Appellant] was not taking his prescribed medications for a substantial period of time and was also drinking alcohol at the time." *Id.* He further contends that the Commonwealth failed to present any evidence that Appellant was "not in a state of psychosis at the time of the killing." *Id.*

A defense of diminished capacity is "an extremely limited defense" where a defendant admits criminal liability generally but seeks to mitigate a first-degree murder charge to third-degree murder. *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011) (citations omitted). "To establish a diminished capacity defense, a defendant must prove that his cognitive

abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." *Id.* (citations omitted).

However, our Supreme Court has explained:

**The mere fact of intoxication does not give rise to a diminished capacity defense.** Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense. **Furthermore, diagnosis with a personality disorder does not suffice to establish diminished capacity.**

*Id.* (citations omitted and emphases added); *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1141 (Pa. Super. 2009) (explaining that "personality disorders or schizoid or paranoid diagnoses are not relevant to a diminished capacity defense" (citation omitted)).

Additionally, "a showing of voluntary intoxication can negate the intent necessary for a conviction of first-degree murder and reduce the crime of murder from first to third degree." *Commonwealth v. Fletcher*, 861 A.2d 898, 907 (Pa. 2004) (citations omitted). However, the evidence presented "must show that the defendant was unable to form the specific intent to kill because he was so overwhelmed or overpowered by drugs to the point of losing his faculties at the time the crime was committed." *Id.* at 908 (citation omitted); *see also Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008) (requiring that a defendant show that he was "overwhelmed to the point

of losing his faculties and sensibilities" to prove a voluntary intoxication defense (citation omitted)).

The defendant bears the burden to prove any defense related to his mental state by a preponderance of the evidence. *See Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa. Super. 2002). As noted previously, the Commonwealth bears the burden to prove each element of first-degree murder, including the defendant acted with specific intent to kill, beyond a reasonable doubt. *See Jacoby*, 170 A.3d at 1076. However, "evidence of intoxication places no additional burden on the Commonwealth . . . . [T]he Commonwealth [is] not required to 'disprove' [the defendant's] intoxication at the time of the crimes." *Commonwealth v. S. Miller*, 897 A.2d 1281, 1285 (Pa. Super. 2006) (citation omitted).

Finally, a defense of voluntary intoxication "is a question of fact solely within the province of the [fact-finder], who is free to believe any, all, or none of the testimony regarding intoxication. Similarly, the defense of diminished capacity is a matter for a [fact-finder] to believe or disbelieve as it sees fit." *Commonwealth v. Vandivner*, 962 A.2d 1170, 1177 (Pa. 2009) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

When the Appellant came to the police station to turn himself in, he said that his girlfriend was cheating on him and he would not take it anymore. In his written statement he said, "the last straw was telling me she was having sex with her cousin and I killed her." In the police interview, he related that they argued the night before, the next day they had more conversation about lost

pregnancies, being a family, and her cheating on him. This argument led to him snapping.

Revelations of infidelity are not sufficient provocation to support a heat of passion defense. *Commonwealth v.* [*D.*] *Miller*, 987 A.2d 638, 649-51 (Pa. 2009); *see Commonwealth v. Mason*, 130 A.3d 601, 629-30 (Pa. 2015). Appellant's arguments over her sex with others as he told it was not such a provoking event or a surprising revelation. *Id.* Appellant stated and testified the argument started the day before, and then it died down. *See Commonwealth v. Frederick*, 498 A.2d 1322 (Pa. 1985).

The diminished capacity defense requires proof by a defendant "that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." *Hutchinson*, 25 A.3d at 312. The defense is extremely limited, and it operates only to negate premeditation and if successful, reduces a first-degree murder charge to third-degree murder. A "diagnosis with a personality disorder does not suffice to establish diminished capacity." *Mason*, 130 A.3d at 631.

The diminished capacity-mental defect defense and the diminished capacity-voluntary intoxication defense operate the same way. *Id.*

Appellant argues that there was photographic evidence of his drinking to support his brief testimony that he was drinking at the time, *i.e.* two red cups on a coffee table in the room. Yet none of the police noticed any signs of intoxication. They testified he was lucid, with a normal demeanor at the station. Appellant's scant evidence is clearly insufficient.

With regard to his mental state at the time of the strangulation, Appellant testified that he had a diagnosis of "psychosis not otherwise specified." His frame of mind was one of "disbelief that I just completed such a horrific crime," and that voices in his head were telling him to kill, "mostly kill myself."

The forensic psychiatrist opined that Appellant's diagnosis was mild symptoms of an unspecified psychotic disorder. His not taking medications had only a minimal ramification at the time. In his report, he concludes that Appellant's descriptions of supposed psychiatric symptoms at the time of the offense is "inconsistent and implausible." Further, he found upon his evaluation that there is no objective, contemporaneous evidence

- 9 -

that he had mental impairments at the time of the offense. Nothing impaired his capacity to understand the wrongfulness of his actions or to refrain from engaging in wrongful activity.

Based on all of the foregoing, the diminished capacity-voluntary intoxication, and diminished capacity-mental defect defenses are rejected.

Trial Ct. Op. at 5-7.

Following our review of the record, the parties' briefs, and the trial court's opinion, we affirm based on the trial court's analysis of this issue. *See id.* The trial court considered Appellant's mental state and alleged impairment at the time of the murder, but ultimately concluded that he failed to present evidence to support a diminished capacity defense. *See id.* As noted previously, both voluntary intoxication and diminished capacity are questions of fact for the fact-finder. *See Vandivner*, 962 A.2d at 1177. Therefore, Appellant is not entitled to relief on this claim.

**Mistake of Fact**

In his remaining claim, Appellant argues that the trial court made a mistake of fact when considering Appellant's statement to police. Appellant's Brief at 13. Specifically, Appellant refers to the trial court's statement when announcing the verdict, where the court noted that Appellant had told police that he had intended to kill the victim. *Id.* However, Appellant contends that when he was specifically asked about his intent during the interview, he told police that he did not intend to kill the victim and had intended to kill himself. *Id.* Appellant argues that although the trial court "points to different more general areas of the transcript" to support its conclusion, "it is a point of

- 10 -

construction in any written document, that the specific language controls the general language contained in the document." *Id.* Therefore, Appellant concludes that the trial court made a "mistake of fact" when concluding that Appellant confessed his intent to kill in the initial interview with police. *Id.*

The trial court addressed Appellant's claim as follows:

In announcing the verdict in open court, this court stated that "[Appellant] was asked at the interview [by police] did you intend to kill her and he answered, yes." Appellant contends that this was an erroneous statement of fact by referencing another part of the interview where Appellant stated that it was not his intention to kill her but he intended to kill himself. The court's statement is a correct finding of fact and conclusion of law. In the police interviews the same day as the crime was committed, the following exchange took place:

Office Ray Siko: You said that she wouldn't die.

[Appellant]: No

Officer Ray Siko: What were you doing at that point when you said that she wouldn't die?

[Appellant]: I was trying to get the life out of her.

Officer Ray Siko: And how we[r]e you doing that?

[Appellant]: I was choking her. I was standing on her.

Officer Ray Siko: With your hands?

[Appellant]: And my feet, my whole body.

Further along in the interview, this line of questioning continued: (Transcript p. 19[.])

Officer Ray Siko: Did you use anything else other than your hands on her body?

[Appellant]: I just made sure that she was dead.

And Appellant further explained: (Transcript p. 31)

[Appellant]: I realized that she is still alive.

- 11 -

Office Ray Siko: mm-hmm

[Appellant]: And I made sure. I got on top of her, put my foot on her just to make sure.

In addition, the court's statement was in direct reference to the Appellant's admission: (Transcript p. 12)

Officer Ray Siko: Can you tell me what happened today?

[Appellant]: Yeah, I killed her.

So, the intention was clear, *i.e.*, to kill, and his girlfriend was the intended victim as he went to great lengths to make sure she was actually dead, including taking her pulse in several places and then stepping on her neck with his foot to end her life for sure.

The autopsy did confirm that the victim died of asphyxia second to strangulation. The injuries were consistent with strangulation by two hands around the neck. But a unique finding here by the autopsy was a fractured neck hyoid bone that is uncommon with strangulation, but it is explained by a foot impressed on the neck.

There was no evidence whatsoever that backs up Appellant's response at the interview, or his trial stating that he wanted to kill himself. No evidence of any attempt on his part to do any harm to himself; rather, all the evidence supported his intentional act of killing his girlfriend.

Trial Ct. Op. at 2-4.

Following our review of the record, we conclude that Appellant is not entitled to relief on this issue. As noted previously, "[i]t is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Palmer*, 192 A.3d at 89 (citation omitted). Here, although Appellant told police that he did not intend to kill the victim, he gave multiple responses indicating the contrary. *See* N.T. Trial, 10/18/22, at 101 (reflecting that when Appellant realized the victim was still alive after the manual strangulation, he placed his

foot on her neck to make sure she was dead). Further, Appellant does not dispute that he killed the victim by way of strangulation. As discussed previously, "[d]eath caused by strangulation is sufficient to infer the specific intent required for a conviction of first degree murder." **Hawkins**, 701 A.2d at 507 (citation omitted). Under these circumstances, we discern no merit to Appellant's mistake of fact claim and conclude that Appellant has no basis for relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/23/2023