J-S21023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DYLAN JOHN SMITH | : | |
| | : | |
| Appellant | : | No. 1514 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 4, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-SA-0000053-2022

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: SEPTEMBER 13, 2023**

Appellant Dylan John Smith appeals from the judgment of sentence imposed following his conviction for defiant trespass.[1]  Appellant challenges the sufficiency of the evidence and argues that the trial court erred in failing to dismiss the charge as *de minimis* pursuant to 18 Pa.C.S. § 312.  We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> Brett Witters and his wife reside at 223 York Street, Mechanicsburg, Cumberland County, Pennsylvania.  The property consists of a single-family detached residence fronting on the York Street sidewalk and a barn at the rear of the property facing an alley.  The barn is used as a garage.  When one faces the front of the residence there is a walkway off the right side of the residence that traverses from the front sidewalk toward the rear of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3503(b)(1)(iii).

property. At the sidewalk end of the walkway there is a gated wrought iron fence that connects from the Witters' residence to the neighboring residence. According to Mr. Witters the approximate 3-foot high latched, but unlocked, gate for the fence is always kept closed and is used to keep their dog inside the enclosure and to keep others out of their yard. Fencing encircles the entire rear yard and connects with the gear barn where there is another gate.

In mid-July, 2021, Mr. Witters had been contacted by an employee of the Pennsylvania Board of Probation and Parole. A friend of his who was incarcerated in a state correctional facility had requested to use the Witters' residence for his home plan upon release. Several questions were asked and Mr. Witters was told that someone would be contacting him to arrange the home visit.

Late in the morning of July 26, 2021, Mr. Witters, accompanied by his dog, returned home after running errands and parked his car at the barn. The dog entered the yard by pushing open the rear gate. Mr. Witters heard gunshots and found his dog bleeding from his jaw area. Mr. Witters called 911 and Mechanicsburg Police personnel arrived at the scene shortly thereafter.

Keith Anthony is a detective with the Mechanicsburg Police Department. On the date in question he was notified of shots being fired but before being able to leave the station he was directed to a phone call from "Agent Smith" (Appellant) who indicated that he was from the Pennsylvania State Parole Department. Appellant stated that he and his partner[2] were at the Witters' residence and were attacked by a dog and that his partner had shot the dog. Detective Anthony then drove to the Witters' residence where the investigation was being conducted primarily by Sergeant Dyer. Both Appellant and his partner were dressed in State Parole attire. Neither Appellant nor his partner showed any signs of being attacked by the dog and indicated they were not hurt. Appellant admitted to one of the officers at the scene that they had gone through the gate before the incident occurred.

Appellant testified that he had been a State Parole Agent since January 2021. On July 26, he and his partner were assigned to

_____

[2] Appellant's partner is referred to as "Agent Jones" in the notes of testimony. *See* N.T., 10/4/22, at 25-27, 34, 49. However, the certified record does not reveal Agent Jones' first name.

conduct a home visit at the Witters' residence. They arrived without prior notice to the Witters' [house] and received no response after knocking on the front door several times. They then went through the iron gate and walked to the back door which they found to be open. Appellant then attempted to call the owner at the telephone number provided to him on the paperwork used for this assignment. This is when the dog appeared and was shot; Appellant then called the police.

Appellant acknowledged that 1) the home owner was not given specific notice they would be arriving that day, 2) the home inspection did not have to be done that day, and if the Witters were not home, he would have to return another day, 3) he did not attempt to call the owner after getting no answer at the front door although he had the number to do so, 4) from the front sidewalk one could not see that there was a rear door to the residence, 5) from the sidewalk there was nothing indicating that the rear yard was open to the public, and 6) [Appellant and his partner] went through the gate to get to the rear of the residence.

Trial Ct. Op., 12/19/22, at 1-2 (some formatting altered).

On October 4, 2022, following a trial *de novo*,[3] the trial court found Appellant guilty of the summary offense of defiant trespass. That same day, the trial court sentenced Appellant as follows: "[T]he sentence of the court is that [Appellant] shall pay the costs and no fine is imposed." Sentencing Order, 10/4/22. Appellant filed a timely appeal to this Court, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Whether the evidence is insufficient to support the trial court's verdict finding . . . [A]ppellant guilty of defiant trespass, 18 [Pa.C.S.] § 3503(b)(1)(iii)?

_____

[3] The record reflects that on March 16, 2022, Appellant was found guilty before the magisterial district judge. Order Imposing Sentence, 3/16/22.

2. Whether the trial court erred in not dismissing the prosecution as a *de minimis* infraction under 18 [Pa.C.S.] § 312?

Appellant's Brief at 5.

In his first claim, Appellant challenges the sufficiency of the evidence supporting his conviction for defiant trespass. Appellant's Brief at 11. Specifically, Appellant argues that the appearance and functionality of the Witters' fence and gate appeared to be ornamental rather than a barrier to entry. *Id.* In support, Appellant asserts that the gate was not locked, and it was not more than three-feet tall. *Id.* Appellant also contends that he reasonably believed that because he was acting in his capacity as a parole agent and was conducting a home visit for a parole plan, Mr. Witters "would have licensed [Appellant] to enter or remain" on the property, and it was not unreasonable for Appellant to believe he was permitted to open the gate, walk into the yard, and knock on the backdoor. *Id.* at 12 (quoting 18 Pa.C.S. § 3503(c)(3)). Therefore, Appellant concludes that he had a lawful purpose and acted with no criminal intent. *See id.*

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded

- 4 -

to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

A person commits defiant trespass, "if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . fencing or other enclosure manifestly designed to exclude intruders[.]" 18 Pa.C.S. § 3503(b)(1)(iii).

[I]n in order to establish a violation it is necessary to prove that the defendant: 1) entered or remained upon property without a right to do so; 2) while knowing that he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass. The crime of defiant trespass thus includes an element of intent or *mens rea*. Therefore, a defendant who entered a property with a *bona fide*, good faith, but mistaken belief that he was entitled to be there cannot be convicted of defiant trespass.

*Commonwealth v. Wanner*, 158 A.3d 714, 718 (Pa. Super. 2017) (citations omitted) (some formatting altered). Further, "[i]t is a defense to prosecution under this section that: . . . the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain." 18 Pa.C.S. § 3503(c)(3).

Here, Mr. Witters, the homeowner and owner of the dog named "Otis," testified that his yard is surrounded by a fence, the back door of the house is not visible from the street, and the purpose of having a fenced-in and gated

yard is to keep his dog inside the yard and "to keep people out." N.T., 10/4/22, at 7-9. Mr. Witters stated that although he was aware that state parole agents would be "getting in touch" with him to "set up" a home visit, no parole agents contacted him prior to their arrival at his house on July 26, 2021. *Id.* at 13-15. Further, Mr. Witters explained that he had not scheduled a home visit with parole agents, and he did not give them permission to enter the yard. *Id.* at 13.

Appellant also testified, and on direct examination by defense counsel, the following exchange occurred concerning Appellant's basis for entering Mr. Witter's yard:

> [Question:] Why did you think it was okay to go through the wrought iron gate and attempt to contact Mr. Witter at his back door?
>
> [Answer:] That is often a situation that we run into. Especially places in town, people don't often use their front doors. I do home plan investigations at apartment buildings or separate -- you know -- where there is a multi units in an establishment and often times places are gated off. You have to go through one gate to get to the right set of stairs or the right door to access the property.

N.T., 10/4/22, at 36-37.[4]

---

[4] Appellant also testified that "Title 61" gives parole agents investigative authority to examine property for safety concerns. N.T., 10/4/22, at 42. However, Appellant was unable to state which section or subsection of the Prisons and Parole Code, 61 Pa.C.S. §§ 101-7301, allows for searches or entry of a residence when parole agents are conducting a home visit as the parole agents were doing in the instant case. When the Commonwealth cross-examined Appellant and asked whether Title 61 allows parole agents to enter a residence when conducting such a home visit, Appellant was unable to

*(Footnote Continued Next Page)*

In its Rule 1925(a) opinion, the trial court explained:

In the instant matter, the front fence, although not of foreboding height, nevertheless was clearly designed to give notice to the public that the owner did not want intrusion. There is no indication that Appellant had any license or privilege to enter the Witters' property. Furthermore, there is no dispute that Appellant entered the Witters' property by going through the latched gate in the front fence; thereby committing the offense for which he had been charged.

The criminal provision in question does provide a defense if "the actor reasonably believed that the owner of the premises ... would have licensed him to enter ..." [18 Pa.C.S.] § 3503(c). Here, Appellant seemed to believe that the Witters[es] would have licensed him to enter the rear yard because he was following up on a home visit previously discussed between Mr. Witters and another State Parole Department employee. Appellant attempted to reference some regulation that would authorize entry but was unable to specifically identify that citation. Under the circumstances of this case, the [trial c]ourt did not believe that it was reasonable for Appellant to conclude that he would have carte blanche access to enter the Witters[es]' property in order to locate an owner. He had the owner's telephone number and could have attempted to call Mr. Witters after receiving no answer at the front door. In fact, had he done so he would have reached Mr. Witters who had, or was about to arrive, at the rear barn. Prior to going through the gate Appellant could articulate no information (lights, noise, voices, open door) that would have allowed him to believe that anyone was home. Appellant offered no suggestion that he knew the Witters[es] or had been to their property previously. Other than State Parole attire and the prior telephone interview with Mr. Witters, to which Appellant was not a party, Appellant offered [n]o reason to believe that he had more license to enter than any other stranger to the property.

_____

provide an answer and stated that he would need to "reference the statute." *Id.* at 44. We note that a review of the notes of testimony reflects that Appellant did not provide a section or subsection from Title 61 that allows parole agents to enter a residence when conducting a home visit as part of an investigation into a future parolee's parole plan, and Appellant has not cited to Title 61 in his appellate brief.

Trial Ct. Op., 12/19/22, at 3 (some formatting altered).

Following our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to support Appellant's conviction for defiant trespass. *See* *Palmer*, 192 A.3d at 89. As noted by the trial court, the fence and gate surrounding Mr. Witters' yard served as "notice to the public that the owner did not want intrusion." *See* 18 Pa.C.S. § 3503(b)(1)(iii). Although Appellant was at Mr. Witters' property in his capacity as a parole agent, Appellant had no contact with Mr. Witters prior to his arrival. Further, Appellant's testimony provided no basis on which to conclude that Appellant was licensed or privileged to enter Mr. Witters' fenced-in yard through the closed gate after there was no response at the front door. *See id.* Therefore, we agree with the trial court that there was sufficient evidence establishing that Appellant entered through the closed gate and remained in the yard knowing he was not licensed or privileged to do so. *See id.*; *Wanner*, 158 A.3d at 718. Accordingly, Appellant is due no relief.

Appellant next contends that the trial court should have dismissed the charge as *de minimis*. *See* Appellant's Brief at 13. Appellant argues that the trial court erred in concluding that the injury to the dog precluded application of the *de minimis rule*, and Appellant asserts that the dog's presence and aggression could not have been known when they opened the gate. *See id.* at 13-14.

"We review a trial court's refusal to dismiss an infraction as *de minimis* for an abuse of discretion." ***Commonwealth v. Toomer***, 159 A.3d 956, 959 (Pa. Super. 2017) (citations omitted). "An abuse of discretion is more than just an error in judgment[,] and on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." ***Id.*** (citation omitted).

Section 312(a) of the Crimes Code provides:

**(a) General rule.**--The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312(a). "The purpose of Section 312 is to remove petty infractions from the reach of the criminal law." ***Commonwealth v. Sandoval***, 266 A.3d 1098, 1104 (Pa. Super. 2021) (citation omitted). However, "[a]n offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs." ***Toomer***,

159 A.3d at 960 (citation omitted); ***see also Commonwealth v. Moses***, 504

A.2d 330, 332 (Pa. Super. 1986).

> Here, the trial court addressed this issue as follows:
>
> The [trial c]ourt denied Appellant's request to invoke the provisions of 18 Pa.C.S. § 312 and dismiss this offense as a *de minimis* infraction.  [Section 312] was designed to remove petty offenses from the record of the criminal law.  The [trial c]ourt felt the present case denoted a bit of entitlement or arrogance that somehow being a parole agent entitled Appellant and his partner to enter fenced property when there was no invitation or urgency to do so. Furthermore, in this case harm resulted from the violation in that the Witters' dog was shot.  Section 312 is limited to those situations where there is no harm done to either a victim or society.
>
> Leniency was shown to Appellant in the court's sentence.

Trial Ct. Op., 12/19/22, at 4 (some citations omitted and formatting altered).

Following our review of the record, we discern no abuse of discretion by

the trial court in declining to dismiss Appellant's defiant trespass charge as *de*

*minimis.*  ***See Toomer***, 159 A.3d at 959.  Although Appellant argues that it

was his partner who actually shot the Witters' dog, both Appellant and his

partner committed the underlying trespass.  Indeed, Appellant and his partner

entered Mr. Witters' fenced-in yard without permission, urgency, or license

when they encountered Mr. Witters' dog.  But for Appellant and his partner's

unlawful intrusion onto the property, they would not have encountered Mr.

Witters' dog, which resulted in the shooting and wounding of the dog as

described above.  Appellant concedes that although the dog survived, Otis lost

six teeth.  ***See*** Appellant's Brief at 7.  In addition to the six teeth, the record

reflects that Otis suffered the loss of part of his jaw after the shooting. **See** N.T., 10/4/22, at 17. Accordingly, we agree with the trial court that the wounding of the dog, Otis, the Witters' family pet, was not *de minimis,* and that the trial court properly concluded that the instant circumstances were not such that no harm was done to either a victim or society. **See** Trial Ct. Op., 12/19/22, at 4; **see also** 18 Pa.C.S. §312; **Moses**, 504 A.2d at 332.

For these reasons, we agree with the trial court's conclusion that Appellant's conduct was not *de minimis*. **See Toomer**, 159 A.3d at 960. Therefore, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2023