J-S18027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEAN PATRICK KNOX JR. | : | |
| | : | |
| Appellant | : | No. 871 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 16, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001690-2022

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: September 9, 2024**

Sean Patrick Knox Jr. appeals from the judgment of sentence entered following his convictions for attempted criminal homicide, firearms not to be carried without a license, possessing instruments of crime, disorderly conduct, 17 counts of recklessly endangering another person (REAP), and two counts of aggravated assault.[1] Knox challenges the amendment of the information, the denial of a jury instruction, and the sufficiency of the evidence. We affirm.

The Commonwealth filed a criminal complaint against Knox listing the above-mentioned offenses, including the 17 counts of REAP. ***See*** Criminal Complaint, filed 5/19/22. The magisterial district court's docket listed the same charges. ***See*** Magisterial District Criminal Docket at 3. However, the later-filed information listed only one count of REAP, rather than 17 counts.

---

[1] 18 Pa.C.S.A. §§ 901(a), 2502, 6106(a), 907(b), 5503(a)(1), 2705, 2702(a)(1), and 2702(a)(4), respectively.

*See* Information, filed 8/30/22, at Count Seven. Regarding REAP, the information alleged that Knox fired "shots in a residential area from a semi-automatic pistol in the direction of *several individuals including minor children*[.]" *Id.* (emphasis added). The day before trial, the Commonwealth moved to amend the information to include 16 additional counts of REAP. *See* Commonwealth's Motion to Amend the Criminal Information, filed 1/3/23. The trial court granted the motion the following day, January 4, 2023, the day of jury selection.

At trial, the Commonwealth presented the following evidence. Raheem Phelps[2] testified that he attended a children's party on May 13, 2022, with his girlfriend and his daughter. N.T., Jury Trial Day 1, 1/4/23, at 29, 31-32; N.T., Jury Trial Day 2, 1/5/23, at 10. The party was outside on the street and at least 10 other people were attending the party when he arrived. N.T., Day 1, at 31, 34. During the party, two people on bicycles passed by, "screaming, somebody coming with a gun." *Id.* at 29, 34-35. About 30 seconds later, somebody ran out and started shooting. *Id.* at 35. Phelps heard about 20 shots coming from the shooter's location. *Id.* at 40, 72. Phelps and others at the party fired back at the shooter. *Id.* at 39, 63.

The Commonwealth then played a video that showed the shooting and the 17 people at the party. *Id.* at 43. Knox was not identified as an attendee

_____

[2] The trial court's Rule 1925(a) opinion references Raheem "Phillips." *See* Rule 1925(a) Opinion, filed 10/3/23, at 5. It also references Raheem Phelps. Upon reviewing the trial transcript, we believe the court's reference to "Phillips" to be a typographical error.

of the party. Phelps identified some of the persons in the video. *See id.* at 41-52. The investigating officer, Detective Jason Russell, testified and identified the remaining individuals in the video that Phelps was not able to identify. *See* N.T., Day 2, at 70-77. Detective Russell explained that he had interviewed Knox a month and a half before the shooting about an unrelated incident. *Id.* at 96, 128. Detective Russell said when he reviewed the video from the instant shooting, he immediately identified Knox as the shooter. *Id.* at 96. He described Knox in the video as "a somewhat tall, thin build, dark skinned black male" with "two to three inch braids . . . or even three to four[.]" *Id.* at 91.

Detective Russell testified that Phelps said the shooter was someone known as "Dooderman," whom Phelps described as a male with braids. *Id.* at 133. Detective Russell said that "Dooderman" was the nickname of an individual named Rakwon Husband. *Id.* Detective Russell was "very familiar with Rakwon and I know that he does not have braided hair. His hair is more of a close-crop style." *Id.* at 134. Detective Russell also noted that other individuals at the party said "Dooderman" was the shooter. *Id.* at 110. Detective Russell learned "that due to the close relationship between the individual whose known alias is Dooderman and Mr. Knox the term has kind of become somewhat synonymous with both of them to a degree." *Id.* at 112. He explained, "Because they're so frequently together, that term, there's Dooderman, I think that's been kind of leveled towards both of them." *Id.* at 112-13; *see also id.* at 139. Detective Russell testified that one of the

attendees at the party identified the shooter as Shizzy, which Detective Russell knew to be Knox's "street name." *Id.*

Another officer, Officer Nicholas Strauch, testified that he monitored the social media profiles of teenagers in Erie, Pennsylvania, including Knox, whom he also knew as Shizzy. *Id.* at 142, 143-44. He had seen Knox over 100 times online, including in videos. *Id.* at 144, 155. Officer Strauch said that at the time of the trial, Knox's street name was "Broad Day Shizzy." *Id.* at 143. Officer Strauch testified that he also monitored Rakwon Husband's social media account and that Rakwon's nickname was Dooderman. *Id.* at 144. Officer Strauch said that he had seen Rakwon in person over a hundred times. *Id.*

Officer Strauch testified that he received a text message from Detective Russell with a still photograph showing a person at the shooting. *Id.* at 146. At the time, Officer Strauch "was unaware of the location, any logistical information, anything background to why [Detective Russell] wanted" the individual in the photograph identified. *Id.* at 147. Officer Strauch identified the person as Knox. *Id.* at 146. He also testified that the individual in the photograph did not have Dooderman's facial features but rather Knox's. *Id.* at 148.

Four days after the shooting, police arrested Knox in a separate incident and recovered a firearm from his pants. *Id.* at 98, 100, 123. The Commonwealth introduced a video of "the booking counter" where Knox was processed for his arrest. *Id.* at 101. In the video, Knox had "three to four inch

braided hair." *Id.* at 102. Detective Russell explained that Knox had the same height, weight, and build as the individual he identified in the video of the shooting. *Id.* at 104. Corporal Dale Wimer compared cartridge cases from the crime scene with those from Knox's firearm, concluding they were fired from the same weapon. *Id.* at 49-52, 54.

Before closing arguments, counsel requested a jury instruction on self-defense. *See* N.T., Day 3, 1/6/23, at 2. Counsel argued the instruction was warranted considering that Knox "was [a] victim of a shooting, . . . two months earlier." *Id.* at 3. The court denied the request, stating, "I don't think there's any facts that can justify that." *Id.* After instructing the jury, the court asked, "Is there anything further that needs to be brought to the Court's attention? Counsel." *Id.* at 87. Counsel stated, "No, Your Honor." *Id.*

The jury found Knox guilty of the above-mentioned offenses and the court sentenced Knox to an aggregate term of 11 to 22 years of imprisonment. Knox filed a post-sentence motion challenging the Commonwealth's amendment of the information, the court's denial of the self-defense jury instruction, and the sufficiency of the evidence identifying him as the shooter. The court denied the motion, and this timely appeal followed.

Knox raises the following issues:

> I. WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR ABUSE OF DISCRETION WHEN IT PERMITTED, OVER OBJECTION, THE COMMONWEALTH TO AMEND THE CRIMINAL INFORMATION ON THE DAY OF JURY SELECTION TO INCLUDE 16 NEW COUNTS OF RECKLESSLY ENDANGERING ANOTHER PERSON.

II. WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR ABUSE OF DISCRETION WHEN IT DENIED [KNOX] A JURY INSTRUCTION FOR SELF-DEFENSE.

III. WHETHER THE COMMONWEALTH FAILED TO PRESENT SUFFICIENT EVIDENCE TO CONVICT [KNOX] BEYOND A REASONABLE DOUBT OF CRIMINAL ATTEMPT (HOMICIDE), AGGRAVATED ASSAULT, RECKLESSLY ENDANGERING ANOTHER PERSON, AND DISORDERLY CONDUCT.

Knox's Br. at 4 (suggested answer omitted).

Knox asserts that the trial court erred by allowing the Commonwealth to amend the information with 16 additional counts of REAP. He claims that the Commonwealth's seeking to amend the information immediately before the trial prejudiced him. Knox further contends that since he waived his preliminary hearing, he had no notice of the identity of the additional victims and was prevented from being able to present a defense "that included a challenge to the identity of the alleged victims." *Id.* at 14. He also claims that he was prejudiced "as the Commonwealth only presented one (1) victim to testify and supported the additional counts with video identification testimony that was introduced at trial for the first time." *Id.* at 14-15.

A court may allow an amendment of the information if "the information as amended does not charge offenses arising from a different set of events" and "the amended charges are not so materially different from the original charge that the defendant would be **unfairly prejudiced**." Pa.R.Crim.P. 564 (emphasis added). When reviewing a challenge to an amendment, we consider:

> whether the crimes specified in the original indictment or information involve the same basic elements and evolved

- 6 -

out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amend[ment] is not permitted. . . . Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Commonwealth v. Moffitt*, 305 A.3d 1095, 1101 (Pa.Super. 2023) (citation omitted). A court should also consider the following factors:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Witmayer*, 144 A.3d 939, 947 (Pa.Super. 2016) (citation omitted).

Knox has waived this issue. He maintains that he objected to the amendment but fails to identify where he raised his objection, and our review of the certified record does not reveal an objection. *See* Pa.R.A.P. 2119(e). Knox did not file a written response to the Commonwealth's written motion to amend, and because he waived having a stenographer present during jury

- 7 -

selection, any objection at that time is not of record. **See** Pa.R.A.P. 302(a); **Commonwealth v. Jackson**, 215 A.3d 972, 977-98 (Pa.Super. 2019).

Even if the claim were not waived, it is meritless. The Commonwealth's amendment "involved the same basic elements and arose out the same factual situation as the crime added by the amendment[.]" **Moffitt**, 305 A.3d at 1101. The original information listed one count of REAP that alleged "several individuals including children" were in the area. Information at Count Seven. Furthermore, the criminal complaint and the magisterial district court docket listed 17 counts of REAP. **See** Criminal Complaint, at Offense 7 (noting 17 counts of REAP); Magisterial District Court Criminal Docket at 3 (listing 17 counts of REAP). Considering these factors, the trial court did not err in concluding that Knox was not prejudiced by the amendment.

Next, Knox challenges the court's denial of his request for a self-defense jury instruction. Knox argues that there was "evidence on the record that an instruction of that nature was appropriate for the jury's consideration." Knox's Br. at 17. He points out that one of the Commonwealth's witnesses testified that two months before the shooting in this case, Knox had been a victim in the same neighborhood. Additionally, Knox notes that a witness testified that the shooter was on foot and alone and that once the shooting began, there were at least six people in the crowd who were armed.

This claim is waived due to Knox's failure to object before the jury retired to deliberate. **See** N.T., Day 3, at 87; **Commonwealth v. Pressley**, 887 A.2d 220, 225 (Pa. 2005) (holding "the mere submission and subsequent denial of

proposed points for charge that are . . . omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points"); Pa.R.Crim.P. 647(C) (stating an objection to a jury instruction must be made "before the jury retires to deliberate").

In his final issue, Knox challenges the sufficiency of evidence for attempted homicide, aggravated assault, REAP, and disorderly conduct. Knox argues that the Commonwealth failed to present sufficient evidence to "establish the identity of [Knox] beyond a reasonable doubt as the person who fired shots into the crowd[.]". Knox's Br. at 19, 23, 24, 25, 26. Knox claims "it was impossible for the jury to establish his identity as the shooter beyond a reasonable doubt as there was another plausible individual that could have been the shooter that was never put before the jury for their consideration." *Id.* at 21. Regarding his convictions for aggravated assault, Knox also argues that the Commonwealth failed to present sufficient evidence of his intent to cause serious bodily injury to another. He states that the record shows "that the bullets fired by the shooter . . . were not directed towards any individual" and no one was injured. *Id.* at 23.

Our standard of review is settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition,

we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Enix*, 192 A.3d 78, 81 (Pa.Super. 2018) (quoting

*Commonwealth v. Estepp*, 17 A.3d 939, 943–44 (Pa.Super. 2011)).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence sufficiently identified Knox as the shooter. While some witnesses identified "Dooderman" as the shooter, it was not "impossible," as Knox suggests, for the jury to determine that Knox was the shooter. To the contrary, the evidence of record was sufficient to prove identification. Both Detective Knox and Officer Strauch immediately identified Knox as the shooter in the video. Detective Russell had over 100 in-person interactions with Knox, and Officer Strauch viewed Knox's social media account over 100 times. Furthermore, officers recovered a firearm from Knox with cartridges that matched the discharged cartridges at the crime scene.

We also conclude that the evidence sufficiently established Knox's intent to cause serious bodily injury. A person is guilty of aggravated assault where the Commonwealth shows that he attempted "to cause serious bodily injury

to another" or caused "such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the human life." 18 Pa.C.S.A. § 2702(a)(1). "[F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. Palmer*, 192 A.3d 85, 96 n.8 (Pa.Super. 2018) (citation omitted). A person is also guilty of aggravated assault where the Commonwealth shows that he attempted "to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

Knox fired his gun numerous times into a crowd of people attending a children's birthday party. This was an offensive act likely to incur death or injury. Viewing the evidence in the light most favorable to the Commonwealth, the evidence sufficiently established Knox's intent to cause serious bodily injury. *Palmer*, 192 A.3d at 95-96 (concluding sufficient evidence of intent for aggravated assault where appellant fired 10 times into a group of people); *Commonwealth v. O'Hanlon*, 653 A.2d 616, 618 (Pa. 1995) (referencing examples of recklessness for aggravated assault including cases where "the defendant could reasonably anticipate that serious bodily injury or death would be the likely and logical consequence of his actions"). We affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/09/2024