J-S42011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER OLIVER | : | |
| | : | |
| Appellant | : | No. 557 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 20, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002399-2023

BEFORE: OLSON, J., KING, J., and LANE, J.

MEMORANDUM BY OLSON, J.: **FILED JANUARY 30, 2026**

Appellant, Christopher Oliver, appeals from the judgment of sentence entered March 20, 2025. In this direct appeal, Appellant's counsel has filed both a petition for leave to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). We decline counsel's request to withdraw and remand with directions for counsel to either file a merits brief or a supplemental **Anders** brief addressing whether Appellant knowingly, voluntarily and intentionally waived his right to counsel.

On June 16, 2023, Ayanna Lockwood (the "victim") met Appellant, her former boyfriend and father of her child, at Maria's, a restaurant on Penn Street in Berks County, Pennsylvania, for drinks. The pair eventually left and went to another restaurant, the Italian Garden, and consumed a few more drinks. Thereafter, they left the Italian Garden and headed toward an

apartment building along Penn Street where the pair used to live together. They proceeded to the apartment building's open backyard and engaged in sexual intercourse. Subsequently, while they were still together, the victim's cellular telephone rang, revealing that she was receiving a telephone call from a mutual friend named "Earl." N.T. Trial, 2/10/25, at 131. Upon seeing the incoming call, Appellant became angry, and stated: "I knew you [were] fucking my friend. … [Y]ou're not gonna [sic] make it out of this alley alive." *Id.* Appellant then "pulled out [a] knife" and began cutting the victim's neck, while continuing to threaten her. *Id.* 132-133. The victim was able to escape when a neighbor opened his back door, allowing her to run through the neighbor's apartment and up the stairs to another apartment of an individual she knew. The victim called the police and Emergency Medical Services ("EMS"). Later, EMS took the victim to Reading Hospital, where she was treated for the "life-threatening" injuries she sustained to her neck. N.T. Trial, 2/11/25, at 243.

On July 18, 2023, the Commonwealth criminally charged Appellant with attempted murder, aggravated assault – serious bodily injury, aggravated assault with a deadly weapon, two counts of simple assault and recklessly endangering another person.[1] Appellant was later deemed incompetent to stand trial. Because of mental disease or defect, Appellant was also remanded to Norristown State Hospital, a mental health treatment facility. On November

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2702(a)(4), 2701(a), 2701(2), and 2705, respectively.

13, 2024, however, the trial court convened a hearing to determine whether Appellant had, in fact, regained the mental competence to stand trial. At the hearing, Appellant expressed a desire to proceed *pro se*. On December 10, 2024, the trial court entered an order, finding Appellant competent for trial, granting Appellant's request to proceed *pro se*, and appointing Alex Amoroso, Esquire, of the Berks County Public Defender's Office as stand-by counsel.

Appellant acted as his own counsel at a jury trial that commenced on February 10, 2025. On February 12, 2025, Appellant was found guilty on all counts. On March 20, 2025, the trial court sentenced Appellant to an aggregate term of 18 to 40 years' incarceration. Appellant filed a post-sentence motion on March 24, 2025, which the trial court denied on March 26, 2025.[2] This appeal followed.[3]

On appeal, Appellant's counsel, William Charles Bispels, Jr., filed a petition for leave to withdraw as counsel and accompanied the petition with

---

[2] Attorney Amoroso filed the post-sentence motion on Appellant's behalf.

[3] As a technical matter, the appeal period in this case did not begin to run until March 28, 2025, because the trial court's order denying Appellant's post-sentence motion was not served on Appellant's counsel until March 28, 2025. **See** Pa.R.Crim.P. 114(C)(2)(explaining that an order is properly entered on the docket when the entry for the order indicates "(a) the date of receipt in the clerk's office of the order or court notice; (b) the date appearing on the order or court notice; and (c) the date of service of the order or court notice."); **see also** Pa.R.A.P. 108(a)(1), (d)(1) (appeal period only begins to run on the date the Clerk "mails or delivers copies of the order to the parties"). Hence, Appellant's notice of appeal, which was filed on April 28, 2025, is timely.

an **Anders** brief.[4]  Before reviewing the merits of this appeal, this Court must first determine whether counsel has fulfilled the necessary procedural requirements for withdrawing as counsel.  **Commonwealth v. Miller**, 715 A.2d 1203, 1207 (Pa. Super. 1998).

To withdraw under **Anders**, counsel must satisfy certain technical requirements.  First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous."  **Miller**, 715 A.2d at 1207.  Second, counsel must file an **Anders** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.  Finally, counsel must furnish a copy of the **Anders** brief to his or her client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007).

---

[4] Appellant's current counsel, Attorney Bispels, of the Berks County Public Defender's Office, entered his appearance on Appellant's behalf on April 29, 2025.

- 4 -

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5; *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (holding that the *Anders* procedure requires this Court to review "the entire record with consideration first of the issues raised by counsel. ... [T]his review does not require this Court to act as counsel or otherwise advocate on behalf of a party. Rather, it requires us only to conduct a review of the record to ascertain if[,] on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated. We need not analyze those issues of arguable merit; just identify them, deny the motion to withdraw, and order counsel to analyze them"). It is only when all of the procedural and substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel complied with all of the above procedural obligations. We must, therefore, review the entire record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the claim raised in the *Anders* brief, which is as follows:

> Whether the evidence presented at trial was sufficient to convict Appellant of criminal attempt to commit murder in the first degree?

*Anders*' Brief at 7 (superfluous capitalization omitted).

The only issue raised by counsel pertains to the sufficiency of the evidence to support Appellant's conviction for attempted murder. Whether evidence is sufficient to support a conviction presents this Court with a question of law and, thus, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa. Super. 2019) (citation omitted). This Court examines:

> whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Id.*** at 300–301 (citation omitted).

As we have held, the elements of attempted murder are as follows:

> Criminal attempt is separately codified at 18 Pa.C.S.A § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

> Criminal attempt is a specific-intent crime. Thus, attempted murder requires a specific intent to kill. ***Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that

the accused with a specific intent to kill took a substantial step towards that goal.").

**Commonwealth v. Palmer**, 192 A.3d 85, 88 (Pa. Super. 2018) (brackets omitted). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008).

The evidence introduced at Appellant's trial was sufficient to prove, beyond a reasonable doubt, that Appellant took a substantial step towards an intentional killing. To be sure, Appellant used a deadly weapon, a knife, to stab the victim's neck approximately three times. **See** N.T. Trial, 2/10/25, at 132-134 (the victim explaining that Appellant cut her neck multiple times); **see also** N.T. Trial, 2/11/25, at 240-241 (the victim's treating physician testifying that she sustained three wounds to her neck, specifically in her "sternocleidomastoid muscle" which "sits just on top of [the] carotid artery and [] jugular vein, which are the two major vascular structures in [the] neck."); **id.** at 243 (the victim's treating physician testifying that the victim "had a high probability of imminent or life-threatening deterioration due to [a] risk of traumatic hemorrhagic shock and/or major vascular injury, which required [medical intervention]."). It is settled that the neck is a vital part of the human body. **See Montalvo**, 956 A.2d at 933. (holding that the neck is a vital part of the human body). It is equally settled that the use of a deadly weapon (such as a knife) to inflict a neck injury constitutes circumstantial evidence of the intent to kill. **See id.** In light of the foregoing, we agree with

counsel's assessment that the Commonwealth presented sufficient evidence to support Appellant's conviction of indecent assault.

Consistent with ***Yorgey***, we have considered the issue raised by counsel and concluded it is devoid of merit. Nonetheless, it is incumbent upon us to review the entire record to ascertain the presence of non-frivolous issues that counsel has either missed or misstated. Our independent review of the record reveals a potential non-frivolous issue: whether Appellant knowingly, intelligently, and voluntarily waived his right to counsel.

"Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution." ***Commonwealth v. Johnson***, 158 A.3d 117, 121 (Pa. Super. 2017) (citation omitted). Our Supreme Court previously stated:

> [i]t is . . . firmly established that an accused has a constitutional right to counsel during trial. While an accused may waive his constitutional right, such a waiver must be the free and unconstrained choice of its maker, and also must be made knowingly and intelligently. To be a knowing and intelligent waiver defendant must be aware of both the right and of the risks of forfeiting that right.

***Commonwealth v. Tyler***, 360 A.2d 617, 620 (Pa. 1976) (citations and quotation marks omitted). Deprivation of these rights can never be harmless. ***Johnson***, 158 A.3d at 121. "Failing to conduct an on the record colloquy pursuant to Rule 121[] before allowing a defendant to proceed *pro se* constitutes reversible error." ***Johnson***, 158 A.3d at 122.

"A [trial court's] thorough inquiry into the accused's appreciation of both the right to counsel and the right to represent oneself must be used in certain summary proceedings, at trial, guilty plea hearings, sentencing, and every 'critical stage' of a criminal proceeding." *Id.* at 122 (citations, original quotation marks, and original brackets omitted). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Id.* (citation omitted). It is well-established that "when a defendant seeks to waive the right to counsel, the trial court is required to conduct, **on the record**, a full and complete waiver colloquy to determine whether the defendant's waiver is knowing, voluntary, and intelligent." *Commonwealth v. Brazil*, 701 A.2d 216, 219 (Pa. 1997) (emphasis added); *see also Johnson*, 158 A.3d at 123 (vacating the appellant's judgment of sentence because there was "nothing in the record indicating [that the a]ppellant ever waived his right to counsel on the record before the trial court conducted [a] suppression hearing").

Pennsylvania Rule of Criminal Procedure 121 sets forth the minimum requirements for a valid waiver-of-counsel colloquy as follows:

**Rule 121. Waiver of Counsel**

**(A) Generally.**

(1) The defendant may waive the right to be represented by counsel.

(2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the [trial court] or issuing

authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

(3) The [trial court] or issuing authority may permit the attorney for the Commonwealth or defendant's attorney to conduct the examination of the defendant pursuant to paragraph (A)(2). The [trial court] or issuing authority shall be present during this examination.

Pa.R.Crim.P. 121(A)(1-3).

The Commonwealth criminally charged Appellant on July 18, 2023. Thereafter, on September 21, 2023, Attorney Amoroso entered his appearance as Appellant's counsel. Upon application of Appellant's counsel, Appellant was deemed incompetent to stand trial on December 14, 2023.

Ultimately, however, on November 13, 2024, the trial court convened a hearing to reassess whether Appellant remained incompetent to stand trial. At the hearing, Appellant expressed a desire to obtain new counsel. The relevant exchange is as follows:

> The court: Will you agree to be examined by a doctor on the Commonwealth's side? I'm asking you again so we can move forward.
>
> [Appellant]: If I get me a conflict lawyer, a conflict attorney, we can move forward.
>
> The court: What conflict attorney? I don't know what you are talking about.
>
> Mr. Amoroso: Judge, he is asking to have me removed.
>
> The court: Okay. No. There is your answer.
>
> [Appellant]: No?
>
> The court: No, I am not appointing another public defender to represent you. That's not going to happen.
>
> [Appellant]: No. No.
>
> The court: Then you won't agree to be examined?
>
> [Appellant]: No.

N.T. Hearing, 11/13/14, at 9. Then, also during Appellant's competency hearing, Attorney Amoroso stated that Appellant expressed a desire to proceed *pro se*. Attorney Amoroso stated:

> Judge, you may want him to be brought down. The only reason I suggest that is he is going to be wanting to represent himself. He has indicated that he does not want me as his attorney in [any] way.

*Id.* at 13. The trial court responded:

> Okay. December 18th at 10:30 [a.m. Appellant,] I'm going to have you brought back down on December the 18th at 10:30 [a.m.] If I make a determination that you are competent and then we go through a number of questions to see whether or not you want Mr. Amoroso to represent you or whether you are going to represent yourself on December 18th, assuming that I would say that you can go forward with your trial, we are going to schedule your trial on the 18th, okay[?] … So by the 18th, assuming if I decide that you are able to proceed, you are going to have to decide if you are going to represent yourself because I am not going to appoint another public defender to represent you.

*Id.* at 14. Thereafter, on December 10, 2024, the trial court entered the following order.

> AND NOW, this [10]th day of December, 2024, upon consideration of [Appellant's] motion under 50 P.S. § 7404 for [a] hearing pursuant to Act 143, Section 401-404 (Mental Health Procedures Act of 1976) to determine competency and [a] hearing [was] held, it is hereby ORDERED that [Appellant] is found [to be] competent to proceed to trial.
>
> FURTHER, [Appellant's] request to proceed *pro se* is GRANTED. Alex Amoroso, Esquire[,] shall be appointed as standby counsel.

Trial Court Order, 12/10/24, at 1 (unnecessary capitalization and footnotes omitted).

There is nothing in the certified record that confirms that Appellant knowingly, intelligently, and voluntarily waived his right to counsel on the record before the trial court. Moreover, there is no confirmation that the trial court, on the record, colloquied Appellant pursuant to Rule 121 at any point; thus, the record appears silent as to whether the trial court colloquied Appellant before it entered the December 10, 2024 order granting Appellant's request to proceed *pro se*. There is also no record that the trial court

conducted a hearing on December 18, 2024 as stated during Appellant's competency hearing. There is also no indication that the trial court, on the record, colloquied Appellant at any time prior to his trial and, in turn, made a determination pursuant to Pa.R.Crim.P. 121 that Appellant knowingly, voluntarily and intelligently waived his right to counsel. Hence, the record is silent on this critical issue. Importantly, "waiver [cannot] be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." ***Commonwealth v. Monica***, 597 A.2d 600, 603 (Pa. 1991). Because there is an apparent failure to conduct a record colloquy that allowed Appellant to proceed *pro se*, we deny counsel's application to withdraw and direct counsel to file a merits brief. In the alternative, counsel may supplement the record with a transcript of the colloquy and file a clarifying ***Anders*** brief explaining that Appellant was properly colloquied pursuant to Rule 121 and that he knowingly, voluntarily and intelligently waived his right to counsel. Counsel shall take the appropriate action within 45 days of the filing of this decision. The Commonwealth shall have 30 days from that filing to file a responsive brief.

Case remanded. Jurisdiction retained. Application to withdraw denied.